334 N.W.2d 337 (1983)
In the Matter of the GUARDIANSHIP AND CONSERVATORSHIP OF Emelyn CERVEN.
PEOPLES STATE BANK, Guardian and Conservator, Appellant,
v.
Oscar CERVEN, Appellee.
No. 2-67818.
Court of Appeals of Iowa.
April 8, 1983.
*338 Steven J. Woolley of Polack & Woolley, Omaha, Neb., for appellant.
Verd R. Bailey, Carlinda, for appellee.
*339 Considered en banc.
JOHNSON, Judge.
Petitioner, Peoples State Bank, guardian and conservator of an elderly ward, appeals from the dismissal of its application to punish respondent, Oscar Cerven, the ward's husband, for contempt for disobeying an order requiring him to reimburse the bank for the ward's living expenses. On appeal, petitioner-bank asserts (1) that the district court had personal and subject matter jurisdiction to enter the order requiring reimbursement, and (2) that there was clear and satisfactory proof that Oscar Cerven's disobedience of the order was willful. We reverse.
In early 1978, Emelyn Cerven's daughter and son-in-law filed a petition for the appointment of a guardian and conservator for Emelyn, then 78 years old. Emelyn's husband, respondent, answered, denying the need for either. The district court, however, entered an order establishing both a guardianship and a conservatorship. The order directed respondent to reimburse petitioner each month for the ward's living expenses. Respondent began making payments to the bank shortly after the order was entered in 1978. He stopped making them in 1981, however, and the bank filed the present application to punish him for contempt.
Shortly before the hearing on the application, respondent requested that the 1978 order be modified to relieve him of the duty of reimbursement. He asserted that the district court lacked personal and subject matter jurisdiction to impose the duty.
At the hearing on the application to punish respondent for contempt, there was testimony concerning a prenuptial agreement regarding property which Emelyn and respondent had signed, respondent's 1980 gift of substantially all his property to his children from a previous marriage, respondent's present assets, income and expenses, and his pending action to dissolve his marriage to Emelyn.
The district court dismissed petitioner's application to punish respondent for contempt on the ground that respondent's failure to pay was not willful. Petitioner then filed a motion for new trial. At the hearing on the motion, the jurisdictional issue was discussed. The district court entered an order denying the motion for new trial and stating that the lack of jurisdiction was the "real reason" it dismissed the application to punish for contempt. Petitioner thereafter filed a timely notice of appeal.
I. Scope of Review. "Where an application for contempt is dismissed, a direct appeal is permitted." State v. District Court in and for Polk County, 231 N.W.2d 1, 4 (Iowa 1975). Our review is on assigned error only. Iowa R.App.P. 4; McDonald v. McDonald, 170 N.W.2d 246, 247 (Iowa 1969).
II. Jurisdiction. As noted above, the district court originally denied the application for contempt based upon a finding that respondent's failure to pay was not willful. After a motion by petitioner, characterized by the trial court as an application for rehearing, the court concluded that it possessed "no jurisdiction of Mr. Cervan." We, therefore, must determine whether the court's conclusion is correct.
A. Personal Jurisdiction. Personal jurisdiction may be conferred upon the court by the consent of the parties. Consent may take the form of a general appearance and participation in the proceedings. See Lonning v. Lonning, 199 N.W.2d 60, 62 (Iowa 1972). "A general appearance is a waiver of notice and if a party appears in person or by an attorney he submits himself to the jurisdiction of the court." Id. The court has found the filing of an answer to be a general appearance "obviating necessity of notice and subjecting the [party] personally to district court jurisdiction." Id.
In the present controversy, the respondent filed an answer as well as additional pleadings. On the basis of respondent's participation in the proceedings, we find the probate court had personal jurisdiction over him.
*340 B. Subject Matter Jurisdiction. Respondent next contends that the district court sitting in probate lacked subject matter jurisdiction to enter its order of April 10, 1978, regarding his support obligation. This contention can be raised on appeal. The issue of subject matter jurisdiction may not have been expressly determined at the trial level however, "`... as it is jurisdictional, we are required to consider it, and avoid exercising authority in a case wherein we have no jurisdiction.'" Lynch v. Uhlenhopp, 248 Iowa 68, 80, 78 N.W.2d 491, 499 (1956) (quoting Quinn v. Capital Insurance Company, 82 Iowa 550, 553, 48 N.W. 935, 936 (1891)).
Subject matter jurisdiction cannot be conferred by consent, waiver or estoppel, Cunningham v. Iowa Department of Job Service, 319 N.W.2d 202, 204 (Iowa 1982), but is conferred solely by constitutional or statutory authority. See Powell v. Khodari-Intergreen Co., 303 N.W.2d 171, 173 (Iowa 1981). The legislature has provided that the district court sitting in probate has jurisdiction of "[t]he appointment of conservators and guardians; the granting of letters of conservatorship and guardianship; the administration, settlement and closing of conservatorships and guardianships." Iowa Code § 633.10(3) (1981).
The jurisdiction of the probate court includes the administration of the ward's estate. A general duty of the conservator is to preserve and protect the estate of the ward. See Iowa Code §§ 633.641, .646,.647, .649 (1981). Under the auspices of section 633.647(6), the conservator, with the approval of the court, may "[d]o any other thing that the court determines to be in the best interests of the ward and [her] estate." The question then is whether the court could properly order respondent's payment of support to the conservator.
One spouse is bound both in law and equity to support the other spouse. See Keefe v. Keefe, 259 Iowa 85, 87, 143 N.W.2d 335, 336 (1966). See also Iowa Code § 252A.3 (1983). Section 633.646(1) provides that the conservator is to "[c]ollect, receive, receipt for any principal or income, and to enforce, defend against, prosecute, compromise or settle any claim by or against the ward ... to ... sue on and defend claims in favor of, or against, the ward...." Given this statutory authority, we believe there is little dispute that the conservator could have enforced respondent's support obligation toward the ward. The next question, thus, is whether that issue was properly before the court.
"In determining what constitutes the subject matter of the litigation, it is necessary to examine the prayer of the plaintiff's petition. The supreme court has repeatedly recognized that the relief to be afforded is limited by the prayer of a petition." Federal Land Bank of Omaha v. Jefferson, 229 Iowa 1054, 1057, 295 N.W. 855, 857 (1944). However, we also recognize that an issue tried by consent is also properly before a court possessing requisite power to determine such an issue. See Iowa R.Civ.P. 88. After reviewing the record in this case, we find that petitioner's characterization of the order as a consent decree has merit.
Dragstra v. Northwestern State Bank of Orange City, 192 N.W.2d 786 (Iowa 1971), involved a situation where the attorney for the party had signed an order which was marked "Approved." Id. at 791. The court found that the trial court in Dragstra "was of course entitled to rely on [the attorney's] approval of the judgment, as an attorney appearing for the party is presumed to act with authority." Id. at 790.
The presumption of an attorney's authority is not conclusive and may be rebutted. Shellhorn v. Williams, 244 Iowa 908, 58 N.W.2d 361. If an attorney in fact has no authority to consent to judgment, the judgment must be vacated. Ohlquest v. Farwell, 71 Iowa 231, 233, 32 N.W. 277, 279 ("It is undoubtedly true that an attorney cannot consent to a judgment against his client, or waive any cause of action or defense in the case; neither can he settle or compromise it without special authority."); Kilmer v. Gallaher, 112 Iowa 583, 84 N.W. 697 (collecting earlier *341 decisions); Nothem v. Vonderharr, 189 Iowa 43, 175 N.W. 967; Kirby v. Holman, 238 Iowa 355, 25 N.W.2d 664.
Id. at 790-91.
In the present situation respondent's attorney signed the decree which noted that the order was "approved as to form." Petitioner called the guardian ad litem as a witness at the contempt hearing. The guardian ad litem testified:
I will say that the way [the decree] was set up, it was set up at the suggestion of Mr. Cerven's attorney at that time because they felt this gave him adequate protection and that some of these funds would be used for ongoing expenses of... the wife's care and protection; and all parties agreed, and part of it was everything was dismissed at that time except for the petition and that was continued that was agreed to go on and she would receive the care at the Clarinda Home, that she would be transferred to the Clarinda Home and Mr. Cerven would make the payments as set out.
App. at 36-37.
The respondent himself testified he was "required" to make the payments and "I knew I had to pay...." App. at 60. He additionally conducted himself in such a manner for three years as to imply consent. Further, in contrast to the facts in Dragstra, 192 N.W.2d at 791, where the party introduced evidence that the attorney was not authorized to settle the case, respondent produced no evidence that his attorney exceeded his authority. Presumably, either the respondent himself or his attorney could have testified to that fact, but neither did.
We do not find the fact that respondent's attorney signed the order "approved as to form," while the attorney in Dragstra merely signed under the notation "Approved," to be significant. Respondent had an opportunity to present evidence which could have distinguished these factual instances but failed to exercise the opportunity. Respondent's only argument is outside the record.
On the basis of the foregoing analysis, we find that the issue of support was raised and negotiated by the parties hereto. That being the case, we believe the principle of waiver enunciated in In re Estate of Lenders, 247 Iowa 1205, 1210, 78 N.W.2d 536, 539 (1956), applies. This principle, called the "wrong docket" principle, has as its premise that the court had jurisdiction and respondent's remedy was to have the issue of support docketed at law or in equity. Respondent's failure to do so resulted in waiver. See Matter of Estate of Young, 273 N.W.2d 388, 391-93 (Iowa 1978).
Contrary to the trial court, we find that the probate court had the requisite jurisdiction to enter the order in question. However, because the trial court's eventual disposition of the case was on jurisdictional grounds, we must remand this proceeding for a determination on the merits whether respondent's conduct was willful.
REVERSED AND REMANDED.